**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**DAVID ALEXANDER,**
        **Petitioner,**

**v.**                                                  **Case No. 4:21cv301-AW/MAF**

**STATE OF FLORIDA,**
        **Respondent.**
**_____/**

## <u>REPORT AND RECOMMENDATION</u>

On July 14, 2021, Petitioner David Alexander, a state inmate proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. On January 7, 2022, Respondent filed an answer, with exhibits. ECF No. 8. Petitioner has not filed a reply, although he was given the opportunity to do so. *See* ECF Nos. 5, 7; *see also* ECF No. 10. Petitioner has filed a notice of inquiry regarding the status of the case. ECF No. 11.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration, the undersigned has determined no evidentiary hearing is required for the disposition of this matter. *See* Rule 8(a), R. Gov. § 2254 Cases. For the reasons stated herein, the pleadings and attachments before the Court show

Petitioner is not entitled to federal habeas relief, and this § 2254 petition should be denied.

## **Procedural Background**

By information filed September 2, 2015, in Leon County Circuit Court Case 15-CF-246, the State of Florida charged Petitioner David Alexander with eight counts, in connection with events that occurred between June 15, 2015, and August 8, 2015:  three counts of sale of a controlled substance (cocaine), a second degree felony, in violation of section 893.13(1)(a), Florida Statutes (Counts 1-3); possession of a firearm by a convicted felon, a second degree felony, in violation of section 790.23(1)(a), Florida Statutes (Count 4); possession of a controlled substance (cannabis), a first degree misdemeanor, in violation of section 893.13(6)(b), Florida Statutes (Count 5); trafficking a controlled substance (cocaine), a first degree felony, in violation of section 893.135, Florida Statutes (Count 6); maintaining a place where controlled substances are used, a first degree misdemeanor, in violation of section 893.13(7)(a)5., Florida Statutes (Count 7); and possession of paraphernalia, a first degree misdemeanor, in violation of section 893.147(1), Florida Statutes.   Ex. B1 at 13-14.[1]   Alexander

---

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No.8.

proceeded to a jury trial on May 18, 2016, before Judge Angela C. Dempsey. Exs. B2-B3 (trial transcript).  Alexander did not testify.  Ex. B3 at 232.  The jury found him guilty as charged on Counts 4, 5, 6, 7, and 8.  *Id*. at 328-29, 357-58; Ex. B1 at 55-60.   That same day, the trial judge adjudicated Alexander guilty and sentenced him to fifteen (15) years in prison on Counts 4 and 6, and 286 days on Counts 5, 7, and 8, to run concurrently, with credit for 286 days' time served.  Ex. B3 at 364-65; Ex. B1 at 64-73.  The State announced a nolle prosequi as to Counts 1 through 3.  Ex. B3 at 366.

Alexander appealed his judgment and sentence to the First District Court of Appeal (First DCA), assigned case number 1D16-2338.  Ex. B1 at 75.  Alexander, through counsel, filed an Initial Brief raising three points.  Ex. B7.  The State filed an answer brief.  Ex. B8.  Alexander filed a reply brief. Ex. B9.  On February 17, 2017, a three-judge panel of First DCA, consisting of Judges Ray, Bilbrey, and Kelsey, affirmed the convictions and sentences without a written opinion.  Ex. B10; <u>Alexander v. State</u>, 236 So. 3d 338 (Fla. 1st DCA 2017).  The mandate issued November 7, 2017.  Ex. B10.

On December 18, 2018, Alexander filed a pro se motion for postconviction relief in the state trial court, pursuant to Florida Rule of Criminal Procedure 3.850.  Ex. C1 at 3-29.  He subsequently filed an amended Rule 3.850 motion, raising nine claims of ineffective assistance of

counsel (IAC).  Ex. C1 at 36-70.  By order on January 30, 2020, the state post-conviction trial court, Judge J. Lee Marsh, summarily denied all but one of Alexander's claims and set the remaining claim, Ground 1, for an evidentiary hearing.  *Id*. at 73-77.  Following the evidentiary hearing held May 14, 2021, Judge Marsh denied postconviction relief in an order rendered May 17, 2021.  *Id*. at 78.  Alexander appealed to the First DCA.  *Id*. at 79-80.  By order on October 5, 2021, the First DCA dismissed the case, assigned number 1D21-2011, after Alexander did not comply with court orders directing him to file an initial brief.  Exs. C3, C4.

In the meantime, as indicated above, on July 14, 2021, Alexander filed his § 2254 petition in this Court.  ECF No. 1.  He raises four grounds, three of which allege ineffective assistance of counsel (IAC):

   (1)  **Trial Court Error – Knock and Announce Violation**:  The trial court erred in denying Alexander's motion to suppress as no exigent circumstances existed to excuse law enforcement's failure to comply with Florida's "knock and announce" statute.  *Id*. at 9, 22.

   (2)  **IAC – Inadequate Motion for Judgment of Acquittal (JOA)**: "Trial counsel argued the wrong case law during the judgment of acquittal phase of trial."  *Id*. at 11.

   (3)  **IAC – Failure to File Motion to Dismiss**:  "Trial counsel was ineffective for failing to file a pretrial motion to dismiss the trafficking in a controlled substance" charges.  *Id*. at 13.

   (4)  **IAC – Failure to Object to Video Evidence**:  Trial counsel "should have filed a motion in limine to prevent the State from

using videos because charges were dropped and videos only show bad character because you don't actually see Defendant on video going to narcotics in rooms or anywhere." *Id*. at 15.

On January 7, 2022, Respondent filed an answer, with exhibits.  ECF No. 8.

Alexander has not filed a reply, although he was given the opportunity to do

so.  *See* ECF Nos. 5, 7; *see also* ECF No. 10.

## <u>Analysis</u>

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody.  Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See, e.g.,* <u>Cullen v. Pinholster</u>, 563 U.S. 170, 180-83

(2011); <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1287-88 (11th Cir. 2011).  "This is

a 'difficult to meet' and 'highly deferential standard for evaluating state-court

rulings, which demands that state-court decisions be given the benefit of the doubt.'" <u>Cullen</u>, 563 U.S. at 181 (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 102 (2011), and <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24 (2002)).  This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Id*.

For ineffective assistance of counsel (IAC) claims, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

<u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).  To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness."  *Id.* at 688.  To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the <u>Strickland</u> standard 'was incorrect

but whether that determination was unreasonable – a substantially higher threshold.'" Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." *Id.*

**Ground 1:  Trial Court Error – Knock and Announce Violation**

In his first ground, Petitioner Alexander asserts the trial court erred in denying his motion to suppress as no exigent circumstances existed to excuse law enforcement's failure to comply with Florida's "knock and announce" statute.  ECF No. 1 at 9, 22.  He explains that the lead detective testified "he called breach of the residence because he felt it was compromised because people were standing outside," and asserts this is not a reason "to not follow procedure" as "it is not illegal to stand outside" and it "[d]efinitely does not meet exigent circumstances."  *Id*. at 9; *see id*. at 22.

Respondent asserts that, assuming Alexander has presented a cognizable claim for federal habeas relief in this ground, it is unexhausted because Alexander did not alert the trial court that he was asserting a federal constitutional claim.  ECF No. 8 at 7.  Respondent explains that Alexander

relied only on Florida state law in support of his claim in the state trial court
and thus failed to apprise the state trial court of any federal constitutional
grounds for his claim, which resulted in a waiver of any federal constitutional
grounds for his claim on appeal to the First DCA and deprived the state
courts of their "one full opportunity to resolve any constitutional issues."
O'Sullivan, 526 U.S. at 845; ECF No. 8 at 7-8; *see* Ex. B1 at 26-30; Ex. B2
at 4-62; Ex. B7 at 21.   Respondent concludes that, because Alexander
cannot now present his claim in state court, it is procedurally defaulted.  ECF
No. 8 at 9.  *See* O'Sullivan v. Boerckel, 526 U.S. 838, 842, 845 (1999).  *See,*
*e.g.*, Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015)
("[T]he petitioner must have given the state courts a 'meaningful opportunity'
to address his federal claim."); Smith v. Jones, 256 F.3d 1135, 1138 (11th
Cir. 2001) ("[I]f the petitioner has failed to exhaust state remedies that are no
longer available, that failure is a procedural default which will bar federal
habeas relief, unless either the cause and prejudice or the fundamental
miscarriage of just exception is applicable.").

Even assuming this ground is properly exhausted, Alexander is not
entitled to relief.  Florida's "knock and announce" statute provides:

> **Officer may break open door, etc., to execute warrant.**—The
> officer may break open any outer door, inner door or window of
> a house, or any part of a house or anything therein, to execute
> the warrant, if after due notice of the officer's authority and

purpose he or she is refused admittance to said house or access
to anything therein.

§ 933.09, Fla. Stat. (2014).  The state trial court heard and denied the motion

to suppress, prior to the start of trial on May 18, 2016, making findings:

> I'm going to find that Detective Roufa was credible.  I
> believe any change in his testimony was minor.  I mean, clearly,
> the door was shut.  There were two people on the porch when
> law enforcement came running up to the house yelling, Sheriff's
> Office Search Warrant.
>
> And I'm going to find that there's a – the officers had a
> reasonable suspicion of the presence of two exigent
> circumstances.  And those are that the occupants of the home
> already knew that law enforcement was there and about to
> execute a warrant based on everything, including what they were
> wearing, their yelling, the person that was on the porch with Mr.
> Alexander that went into the home and shut and locked the door.
>
> It's a small area there in the home, in the living room, in the
> kitchen, that on two of the three buys there were four or five
> people in addition to the defendant.  And then on this date there
> were four or five people in addition to the defendant that were
> hanging out there.
>
> And that goes into the second exigent circumstance that
> I'm finding the officers had a reasonable suspicion of, and that's
> that destruction of evidence was being attempted with – by the
> fact that the person was running into the house, the kitchen and
> the sink were very close by.  And so I'm going to find that it was
> reasonable for the officers to believe that was also an exigent
> circumstance.  And I'm going to deny the motion to suppress.

Ex. B2 at 61-62.

The record supports the trial judge's findings.  Specifically, Detective

Roufa testified at the hearing that he was the case agent and he had arrived

in a marked K9 unit, to execute the search warrant, with additional officers in a white van following the marked unit.  Ex. B2 at 20, 22-23.  He testified there were "at least eight" officers.  *Id*. at 22.  The officers were wearing Sheriff's Office Vice Narcotic shirts, hats, and raid vests clearly marked with "Sheriff." *Id*. at 21.  He testified that, upon arrival, they exited the vehicles, identified themselves, and stated their purpose for being there as they approached the house:

> I exited the vehicle.  Obviously, everyone else exited the van. We start approaching the house.  We run to the front of the house yelling, Sheriff's Office search warrant as Mr. Alexander was on the front porch.  As we approached the front porch – I believe it was Antwan Wilson but I'm not certain – there was a black male that was also on the front porch, immediately ran inside, shut the door, and locked it.

*Id*. at 23.  He testified that "we typically all yell" loudly and further explained the procedure:

> If there's someone – now, if we're going to knock on the door, we're not going to yell Sheriff's office search warrant first.  We're going to knock, give them the opportunity to come to the door. And then Sheriff's Office search warrant, Sheriff's office search warrant, Sheriff's office search warrant.  And then no one comes to the door still, we make entry.
>
> In this situation, we're immediately compromised.  So we yell, Sheriff's Office search warrant.  And then if that door is locked then we make entry.

*Id*. at 24.  Roufa testified that Alexander was "immediately compliant."  Id. at 25.  He further testified:

Q  At least one other person ran inside the house that could see y'all coming.

A  Yes.

Q  Okay.  And that – and they locked the door behind them?

A  Yes, they did.

Q  Did y'all try the doorknob first?

A  Yes.

Q  Okay.  And did it open?

A  No.

Q  So what happened then after that?

A  Detective Stinson used a battering ram to make entry and it was difficult.  It was a hard door so, it – you know, the bottom panel got – you know, came out and we had to crawl through the door to get in.

Q  Okay.  So basically, the bottom half of the door got knocked out, and y'all went underneath that.

A  Yes.

Q  Okay.  But, again, this is after they've already seen you coming upon on the house and one runs inside and locked the door, correct?

A  Yes.

Q  Okay. . . . If you had knocked and announced, does that change the fact that they know you're already there?  I mean, they all saw you running up right?

A  No.  I mean, it wouldn't haven't [sic].

*Id*. at 25-26.    Roufa testified that the officers were concerned about destruction of evidence and officer safety because, from videos taken by the confidential informant, they knew the house typically had four or five people inside.  *Id*. at 26-28.

The purpose of the "Knock and Announce" rule, codified in section 933.09, quoted above, is for law enforcement to inform occupants of a dwelling that they are at the door and for a lawful purpose.  *See, e.g.*, State v. Bamber, 630 So. 2d 1048 (Fla. 1994) ("The law forbids the law enforcement officers of the state or the United States to enter before knocking at the door, giving his name and the purpose of his call.  There is nothing more terrifying to the occupants than to be suddenly confronted in the privacy of their home by a police officer decorated with guns and the insignia of his office.  This is why the law protects its entrance so rigidly." (quoting Benefield v. State, 160 So. 2d 706, 709 (Fla. 1964))); Kellom v. State, 849 So. 2d 391, 393 (Fla. 1st DCA 2003) ("The common law knock and announce principle forms a part of the Fourth Amendment reasonableness inquiry.  The knock and announce rule has been recognized as part of the common law of Florida.  The Florida Legislature codified the knock and announce rule in section 933.09 . . . ."  (citations omitted)); Wilson v. State, 673 So. 2d 505 (Fla. 1st DCA 1996) ("The earliest statement of the

knock-and-announce requirement is usually thought to be in <u>Semayne's</u> <u>Case</u>, an opinion issued in 1603, in which the court held that, in serving a writ at a party's house, the sheriff was required to announce his authority and purpose."). Here, Alexander and the other person knew the law enforcement officers were there and why, because they were standing outside on the front porch when the officers arrived. As the officers exited their vehicles and approached the house, the other person ran inside and locked the door, effectively refusing the officers' admittance and necessitating the use of the battering ram to gain entry to the house. Even if the officers' entry is considered "unannounced," the record supports the trial court's determination that exigent circumstances existed, specifically concerns about destruction of evidence and officer safety, justifying their entry. *See, e.g.*, <u>Wilson</u>, 673 So. 2d at 511-12. *See also, e.g.*, <u>United States v.</u> <u>Dandridge</u>, No. 5:05cr30-Oc-10GRJ, 2006 WL 8450192 at *9 (May 26, 2006) (report and recommendation to deny motion to suppress evidence seized during execution of search warrant and concluding, among other things, that officers gave sufficient notice of their authority and purpose before entering premises, explaining most credible witness "testified that when law enforcement approached the residence from the street they drove up to the residence on a lengthy driveway in a caravan of vehicles at least one of

which was a marked patrol car with its lights activated.  Immediately upon exiting the van in which the SWAT team was located law enforcement began announcing to the occupants of the residence over a loud speaker on the patrol car who they were and the purpose of their entry onto the property. The announcement was "Marion County Sheriff's Office – Search Warrant." Not only would any occupants of the property have been alerted to the fact that the officers were law enforcement officers executing a search warrant any individuals on the entire parcel – whether inside of a building or standing outside of a building – would have known that the police were there to execute a search warrant.").

Based on the foregoing, Alexander did not exhaust this ground and it is procedurally defaulted.  Even if considered, this ground should be denied because Alexander has not shown the state court's denial of his motion to suppress involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).

## Ground 2:  IAC – Inadequate Motion for JOA

In his second ground, Petitioner Alexander asserts trial counsel provided ineffective assistance by "argu[ing] the wrong case law during the judgment of acquittal phase of trial."  ECF No. 1 at 11.  Respondent indicates

Alexander raised a similar claim in fifth ground of his amended Rule 3.850 motion. Ex. C1 at 53-56; *see* ECF No. 8 at 10. Respondent asserts that, because Alexander did not appeal the order denying postconviction relief, this ground is unexhausted and procedurally defaulted. ECF No. 8 at 10-11. Respondent's point is well-taken. *See, e.g*., O'Sullivan, 526 U.S. at 845 ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

Even if the ground is considered, it lacks merit. In denying the claim, the state postconviction trial court made the following findings:

> **Ground Five**: Mr. Alexander claims his trial counsel was ineffective for failing to make an adequate motion for judgment of acquittal based on the amount of cocaine found in his residence. He claims the individual batches of cocaine found needed to be tested individually before combining them for the purpose of weighing to ensure that everything in the combination was indeed cocaine. He claims his trial counsel's argument on this issue was insufficient to preserve the claim for appeal.

> **Analysis**: Mr. Alexander's assessment of his counsel's argument is incorrect – the appropriate argument was made and rejected. *Attachment E (Transcript)*. Any issue with the correctness of this ruling needed to be brought on appeal. Fla. R. Crim. P. 3.850(c). Ground Five is denied.

Ex. C1 at 75-76.

The record supports the state court's findings. Specifically, in moving for JOA, defense counsel argued:

> As to the trafficking in cocaine count, the defense is moving for a judgment of acquittal. And the specific reason is Search Warrant Item 11, which was the pieces of cocaine that were taken out of the freezer, not the bag of cocaine in the freezer but the pieces, which FDLE has testified weighed 18.2 grams, through Jeremiah Bortle.

> If you take a look at the photographs of that cocaine in the freezer, you'll see that it's broken into various different pieces. And so what they are required to do is to collect each piece individually, test each one to make sure it's cocaine, and then they combine them for the purpose of weight.

Ex. B3 at 236-37; *see id*. at 221-25 (trial testimony of Jeremiah Bortle, FDLE supervisor and analyst in chemistry and evidence section of lab). Defense counsel cited <u>Greenwade v. State</u>, 124 So. 3d 215 (Fla. 2013), and argued:

> In that opinion, they held that law enforcement must weigh each of the pieces of cocaine individually and then they go ahead and combine them after confirming each one is cocaine. And the reason they do that is to make sure that you're not accidentally combining a bunch of things that might not be cocaine with a little piece of cocaine that suddenly turns everything into that weight.

Ex. B3 at 237; *see* <u>Brown v. State</u>, 146 So. 3d 1242 (Fla. 1st DCA 2014). Defense counsel argued that the failure to properly test and weigh the cocaine precluded Alexander from being convicted of drug trafficking:

> And right here, if the contents of that freezer, if some of those things were not cocaine, they weren't tested ahead of time, we will never know at this point, because law enforcement combined them all together. So I'm going to say that the weight at this point is an invalid weight, and that's due to the failure to test them. And so removing the 18.2 grams from the equation would drop this case well under the 28 grams. And so I'm asking for a judgment of acquittal as to the trafficking count.

Ex. B3 at 238.   The prosecutor responded that law enforcement properly tested the crack cocaine, as it was all found in the freezer, "the overall container," and also tested separately the individual bag found in the freezer:

> I do agree with Mr. Brian that if that refrigerator/freezer had contained, you know, five or ten different bags, I would agree that we would have to test all of those.  But the way Mr. Alexander had this packaged, he essentially turned the freezer into one giant container.  Those were all contained within that thing.  It's different that having one giant bag versus ten smaller bags. If we tested ten smaller bags but it's all in one giant bag, we just test the sample that we have in there.
>
> We did test separately the individual bag.  And that's State Exhibit No. 17 that was self-contained in the freezer.  That was tested separately.  So I believe we have met the requirements of that, because we tested what was in the overall container.

*Id*. at 239.   The judge denied the JOA motion, making findings and concluding, essentially, the freezer was the container for the large pieces of crack cocaine found inside, as argued by the prosecution:

> Okay.  And in the pictures that the State just identified, there are a handful of larger pieces.  There's, I believe, one really large one on the frying chicken leg quarters and then three a little bit smaller ones.  You can see those clearly in State's 8-II.
>
> And then there's also a large piece kind of tucked under that same frying chicken leg quarters bag that you can see in 8-KK.
>
> And then 8-LL, there's, looks like, about seven of the smaller pieces that are about the same size as the smaller pieces that I mentioned earlier that are maybe, like, one-inch-by-one-inch or something.

     Based on the fact that these are not separately packaged in Baggies or something – or Saran Wrap or something similar, that they're all just stored in the freezer, they appear to be the same in the pictures. But more importantly, Mr. Bortle testified that it appeared uniform when he tested, tested it. And that was certainly in a much fewer pieces that it's in now. I mean, now it's all crunched up into dozens, if not more, pieces.

     Based on all that, I'm going to deny the motion for judgment of acquittal.

*Id*. at 239-40.

Thus, as the state post-conviction court concluded, defense counsel did not perform deficiently. To the contrary, defense counsel made the appropriate argument regarding testing, but the court rejected that argument, concluding that the cocaine in one container (the freezer), not separately packaged in baggies or individually wrapped in plastic wrap. *See, e.g.*, Greenwade, 124 So. 3d at 229 ("While we hold that the State must chemically test every individually wrapped packet of white powder seized in order to establish the statutory threshold weight for trafficking, we emphasize that this rule only applies when the substance discovered is one that poses an identifiable danger of misidentification, such as the white powder discovered in this case. If the chemical composition of the substance seized does not pose a danger of misidentification, the State is not required to chemically test individually wrapped packets in order to establish the

requisite statutory weight for trafficking."); <u>Bellizia v. Fla. Dep't of Corr.</u>, 614 F.3d 1326, 1330 (11th Cir. 2010) (pre-<u>Greenwade</u> decision affirming district court's conclusion defense counsel was ineffective for not challenging "State's failure to test contents of each of the thirty-two pellets, which allegedly contained heroin" and explaining, among other things, the Third DCA's decision in <u>Ross v. State</u>, 528 So. 2d 1237 (Fla. 3d DCA 1988), "sets out the controlling bright-line rule that the State must test each separately wrapped package that is suspected of containing controlled substances in order to establish the identity *and* weight of the controlled substance"); <u>Bond v. State</u>, 538 So. 2d 499, 500 (Fla. 3d DCA 1989) (holding that "<u>Ross</u> does not mandate the testifying of each rock of cocaine" and cited with approval in <u>Greenwade</u>, 124 So. 3d at 229).

Based on the foregoing, Alexander did not exhaust this ground and it is procedurally defaulted.  Even if considered, this ground should be denied because Alexander has not shown the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).

## Ground 3:  IAC – Failure to File Motion to Dismiss

In his third ground, Petitioner Alexander asserts his trial counsel provided ineffective assistance by "failing to file a pretrial motion to dismiss the trafficking in a controlled substance" charges.  ECF No. 1 at 13. As Respondent asserts, although Alexander raised this in the third ground of his amended Rule 3.850 motion, he did not appeal the postconviction order and, thus as with Ground 2, *supra*, this ground is unexhausted and procedurally defaulted.  ECF No. 8 at 11-12; *see* Ex. C1 at 46-50.  *See, e.g.*, O'Sullivan, 526 U.S. at 845.

Even assuming this ground is considered, Alexander has not shown entitlement to relief.  In denying the claim, the state postconviction trial court made the following findings:

> **Ground Three**:  Mr. Alexander claims his trial counsel was ineffective for failing to file a motion to dismiss the trafficking in a controlled substance charge based on the total weight of the drugs seized.  Florida law requires the controlled substance to weigh 28 grams or more to sustain this charge.  § 893.135(b), Fla. Stat. (2015).  Mr. Alexander admits that the probable cause affidavit states that police found more than 28 grams of cocaine at his residence but claims that because it does not allege that they immediately field tested 4.4 grams of it, the charge should have been dismissed.  *See Attachment A (Probable Cause Affidavit)*.

> **Analysis**:  There is no legal requirement for police officers to perform a field test on a suspected controlled substance before seizing it.  And further, the probable cause affidavit is a summary of the evidence against a suspect at the time of arrest,

not the totality of all of the evidence that will eventually be admitted at trial.  For these reasons, Ground Three is denied.

Ex. C1 at 75.

The record supports the state court's findings.  In particular, Detective Roufa testified at trial regarding Alexander's post-<u>Miranda</u> statement to law enforcement:

> He said he'd lived there since about January 2015, that he had been selling crack cocaine out of there since that time due to not being able to find a job.  He advised that the crack in the residence was his.

Ex. B2 at 184; *see* Ex. B3 at 198.  Further, as explained in the analysis of Ground 2, *supra*, in moving for JOA, defense counsel argued that "law enforcement must weigh each of the pieces of cocaine individually and then they go ahead and combine them after confirming each one is cocaine" and "the reason they do that is to make sure that you're not accidentally combining a bunch of things that might not be cocaine with a little piece of cocaine that suddenly turns everything into that weight," citing <u>Greenwade v. State</u>, 124 So. 3d 215 (Fla. 2013).  Ex. B3 at 237.  Defense counsel argued that the failure to properly test and weigh the cocaine precluded Alexander from being convicted of drug trafficking.  *Id*. at 238.  Had the court granted the JOA motion, the end result would have been the same as if the court had granted a pretrial motion to dismiss the trafficking charge.  That the court

denied the motion does not render defense counsel's performance ineffective. *See, e.g.*, <u>Pinkney v. Sec'y, Dep't of Corr.</u>, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief.").

Based on the foregoing, Alexander did not exhaust this ground and it is procedurally defaulted. Even if considered, Alexander's trial counsel was not ineffective for not filing a pretrial motion to dismiss the trafficking charge where counsel made the same arguments in the JOA motion, which the trial court denied. Alexander has not shown the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this ground should be denied.

### <u>Ground 4</u>:  IAC – Failure to Object to Video Evidence

In his fourth ground, Petitioner Alexander asserts his trial counsel provided ineffective assistance because he "should have filed a motion in limine to prevent the State from using videos because charges were dropped and videos only show bad character because you don't actually see Defendant on video going to narcotics in rooms or anywhere." ECF No. 1 at 15. Similar to Grounds 2 and 3, *supra*, as Respondent asserts, although he

raised this in the fourth ground of his amended Rule 3.850 motion, Alexander

did not appeal the postconviction order and, thus, this ground is unexhausted

and procedurally defaulted.  ECF No. 8 at 12-13; *see* Ex. C1 at 50-53.  *See,*

*e.g.*, O'Sullivan, 526 U.S. at 845.

If considered on the merits, Alexander has not shown entitlement to

relief.  The state postconviction trial court denied relief, making the following

findings:

> **Ground Four**:  Mr. Alexander claims his trial counsel was
> ineffective for failing to object to the admission of video evidence
> showing him selling drugs to various people.  He claims that
> because the State *nolle prossed* three charges of sale of a
> controlled substance, the State should not have been able to use
> the videos of these sales.
>
> **Analysis**:  The State did indeed drop these charges,
> *Attachment B (Information)*; *Attachment C (Court Minutes)*, but
> the videos were still relevant and admissible to prove the charges
> of trafficking in a controlled substance and maintaining a place
> where controlled substances are used.  Both of those offenses
> contain an element involving selling controlled substances.
> *Attachment D (Jury Instructions)* at 3, 7.  For these reasons,
> Ground Four is denied.

Ex. C1 at 75.

The record supports the findings of the state postconviction trial court.

In particular, as the court explained, the videos were relevant and admissible

to prove the charge in Count 7, maintaining a place where controlled

substances are used.  *See* § 893.13(7)(a)5., Fla. Stat. (2015).  At trial, the

confidential informant testified that he appeared in the videos and the videos depicted him purchasing crack cocaine from Alexander at Alexander's residence on three different occasions. Ex. B2 at 125-33, 184. The videos, State's Exhibit 4-A, were admitted into evidence, with no objection, and played for the jury. *Id*. at 126. Given the relevance of the videos, defense counsel did not perform deficiently by not objecting to their admission. *See, e.g.*, Pinkney, 876 F.3d at 1297. Moreover, the record reflects the State announced the nolle prosequi as to Counts 1 through 3, the three counts charging sale of a controlled substance, after the conclusion of the trial and sentencing proceedings. Ex. B3 at 366.

Petitioner Alexander has not exhausted this ground and it is procedurally defaulted. If considered, it should be denied because he has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2).

## Conclusion

Petitioner Alexander is not entitled to federal habeas relief. It is respectfully **RECOMMENDED** that the § 2254 petition, ECF No. 1, be **DENIED**.

## **Certificate of Appealability**

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted).  Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument regarding a certificate by filing objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on November 17, 2022.

S/  Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  See 11th Cir. R. 3-1; 28 U.S.C. § 636.**